**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

JOHNS MANVILLE CORPORATION, a Delaware corporation, and
JOHNS MANVILLE, a Delaware corporation,

        Plaintiffs,

  v.

KNAUF INSULATION, INC., a Delaware corporation, and
KNAUF INSULATION GMBH, a German corporation.

        Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Johns Manville Corporation and Johns Manville (collectively, "JM"), for their Complaint against Defendants Knauf Insulation, Inc. and Knauf Insulation GmbH (collectively, "Knauf" or "Defendants"), allege as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement. Upon information and belief, Defendants have violated, and continue to violate, the patent laws of the United States, 35 U.S.C. §§ 271 and 281-285, *et seq.*, by infringing U.S. Patent No. 6,245,282 (the "'282 Patent").

### PARTIES

2. JM incorporates by reference each and every allegation in the preceding paragraphs.

1

3. Plaintiff Johns Manville Corporation is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 717 17th Street, Denver, Colorado 80202.

4. Plaintiff Johns Manville is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 717 17th Street, Denver, Colorado 80202.

5. Defendant Knauf Insulation, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at One Knauf Drive, Shelbyville, Indiana 46176.

6. Defendant Knauf Insulation GmbH is a foreign limited liability company organized and existing under the laws of the country of Germany, having a principal place of business at Am Bahnhof 7, 97346 Iphofen, Germany.

7. Upon information and belief, effective August 11, 2014, Knauf Insulation, Inc. completed its acquisition of an entity known as Guardian Insulation Corporation including past liabilities. Upon information and belief, the transaction included a subsidiary known as Guardian Fiberglass, which was integrated into Knauf Insulation, and a subsidiary known as Guardian Laminated Building Products, which became Silvercote, LLC.

8. Upon information and belief, Guardian Fiberglass is and has been a supplier of insulation products for the construction market and is now part of Knauf Insulation, Inc.

**JURISDICTION AND VENUE**

9. JM incorporates by reference each and every allegation in the preceding paragraphs.

10. This Court has subject matter jurisdiction over the patent claims in this action between all of the parties pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Knauf Insulation, Inc. pursuant to the Colorado Long Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, upon information and belief, at all pertinent times, Knauf Insulation, Inc. actively and regularly engages in business in the State of Colorado, has sold and continues to sell products in Colorado, and has derived and continues to derive substantial revenue from things used or consumed in the State of Colorado. Upon information and belief, at all pertinent times, insulation that was made using the JM patented technology at issue in this action has been sold and is currently being sold by Knauf in Colorado. In addition, at all pertinent times, Knauf Insulation, Inc. acted with knowledge that the result of its actions would cause harm to JM in Colorado.

12. This Court has personal jurisdiction over Knauf Insulation GmbH pursuant to the Colorado Long Arm Statute, C.R.S. § 13-1-124, and the United States Constitution because, upon information and belief, at all pertinent times, Knauf Insulation GmbH actively and regularly engages in business in the State of Colorado, has sold and continues to sell products in Colorado, and/or has derived and continues to derive substantial revenue from things used or consumed in the State of Colorado. Upon information and belief, at all pertinent times, insulation that was made using the JM patented technology at issue in this action was sold and is currently being sold by Knauf in Colorado. In addition, at all pertinent times, Knauf Insulation GmbH acted with knowledge that the result of its actions would cause harm to JM in Colorado.

13. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400 because Knauf resides in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

## BACKGROUND

**I.    JM's Business**

14. JM incorporates by reference each and every allegation in the preceding paragraphs.

15. Since its founding over 150 years ago, JM has focused on developing materials to make diverse environments stronger, more durable, and more energy efficient and comfortable. JM manufactures premium-quality building and mechanical insulation, commercial roofing, and glass fibers and nonwoven materials for commercial, industrial and residential applications. JM products are used in a wide variety of industries including building products, aerospace, automotive and transportation, filtration, commercial interiors, waterproofing, and wind energy. JM's name has become synonymous with innovation and quality in the building and specialty materials industry.

16. Through its extensive internal research and development efforts, JM is an innovator in developing building material solutions. JM has been a pioneer in the insulation and fiberglass industry for decades and was an initial innovator of rotary fiberization over 40 years ago. JM continues to vigorously engage in research and development directed to fiberization and spinner disc technology used to make fiberglass insulation. JM remains a major manufacturer and markets a multitude of thermal and acoustical insulation products directly using the patented fiberization technology that is the subject of this action.

17. JM has over 7,000 global employees, provides products to more than 85 countries, and operates 44 manufacturing facilities in North America, Europe, and China.

18. Since 1988, JM's global headquarters has been located in downtown Denver, CO.

19. JM's main research and development technical center is located in Littleton, CO.

## II.   JM's Patent

20. JM incorporates by reference each and every allegation in the preceding paragraphs.

21. On June 12, 2001, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 6,245,282, titled "Apparatus and Method For Forming Fibers From Thermoplastic Fiberizable Materials" (the "'282 Patent").  John Wayne Baker and Rodney Roger Smalley are listed as the inventors of the '282 Patent.  A true and correct copy of the '282 Patent is attached hereto as **Exhibit A**.

22. The '282 Patent was duly and legally issued.

23. The '282 Patent is directed to an apparatus and method for fiberization that generally includes manifolds for combustion of gases both inside and outside the fiberizing disc.

24. The inventors of the '282 Patent assigned their rights to the '282 Patent to Johns Manville International, Inc., now known as Johns Manville.

25. JM owns the '282 Patent and is the sole owner of the right to sue and to recover for any current or past infringement of the '282 Patent.

## COUNT 1
### (Infringement of U.S. Patent No. 6,245,282)

26. JM incorporates by reference each and every allegation in the preceding paragraphs.

27. Defendants directly compete with JM in the market for fiberglass insulation and related products.

28. Upon information and belief, Defendants have infringed and/or are continuing to infringe, literally and/or under the Doctrine of Equivalents, at least Claim 6 of the '282 Patent in violation of 35 U.S.C. § 271 by engaging in acts that involve making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, apparatuses that embody one or more claims of the '282 Patent, including, without limitation, using methods to manufacture fiberglass insulation as set forth in Claim 6 of the '282 Patent.

29. JM's assertion of infringement is grounded on the decision of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") in the case of *Hoffman-La Roche Inc. et al. v. Invamed Inc., et al.*, 213 F.3d 1359 (Fed. Cir. 2000). In *Hoffman*, the plaintiff was not able to determine by any publicly available means whether the defendant was infringing its patent. The plaintiff therefore approached the defendant in good faith and asked for cooperation in resolving the question of infringement. After the defendant refused to cooperate, that is, refused to provide any information that would allow the plaintiff to determine whether infringement was occurring, the plaintiff filed suit. In ruling on a subsequent appeal, the Federal Circuit held that the plaintiff's methods satisfied the requirements of Rule 11, even though it turned out that the defendant was not infringing the patent asserted by the plaintiff. *Id*. at 1364-1365.

30. In this case, other than directly asking Defendants, JM is not aware of any method or means available to determine whether fiberglass insulation manufactured by Defendants is and has been made by use of the inventions defined in one or more claims of the '282 Patent. For example, inspection of Defendants' products does not reveal whether the products are made

using the inventions claimed in the '282 Patent. Similarly, investigation of publicly available sources has not revealed information sufficient to determine whether Defendants' products are made using the inventions claimed in the '282 Patent.

31. By means of a letter dated September 8, 2015, JM gave Defendants actual notice of the '282 Patent.

32. On September 8, 2015, in connection with providing notice of the patent, JM explained in a letter to Defendants that JM believed it impossible to determine whether Defendants were practicing certain of JM's patents – including the '282 Patent – using only public information. In its September 8, 2015 letter, JM identified only four (4) patents of its portfolio of over 350 issued and 160 pending patents.

33. In second letter dated September 8, 2015, JM requested cooperation from Defendants to evaluate the question of patent infringement and suggested an informal process that would allow the parties to address JM's concerns regarding use of its technology and infringement of its patents. Specifically, JM solicited Defendants' cooperation in providing the information necessary to rebut JM's concerns regarding infringement of certain of JM's patents by Defendants. Copies of JM's September 8, 2015 letters are attached as **Exhibits B and C, respectively**, to this Complaint.

34. JM's actions described above in attempting to evaluate the question of patent infringement with Defendants' cooperation are consistent with the guidance from the Federal Circuit in *Hoffmann*.

35. In subsequent communications, counsel for Defendants did not refute or contradict JM's comments regarding the impossibility of JM independently determining whether

Knauf was infringing its patents. At the same time, counsel for Defendants expressed Defendants' willingness to participate in a mediated, extra-judicial process that would allow JM to receive information from Defendants directed to the question of the alleged infringement of four JM patents, including the '282 Patent.

36. In September 2015, the parties tentatively agreed to engage in an informal process for resolving JM's concerns, subject to working out the logistical details, including the selection of a mediator agreeable to both parties and a protocol for the provision of information by Defendants that would allow the question of infringement to be fairly addressed.

37. In connection with the parties' discussions about creating an informal process to resolve JM's concerns regarding patent infringement by Defendants, including infringement of the '282 Patent, the parties discussed and arrived at agreement on the selection of a neutral mediator located in Chicago, Illinois. The mutually agreed upon mediator is a patent litigator in a boutique intellectual property firm.

38. In connection with the parties' discussions, Defendants requested and JM agreed to provide a proposal for conducting a non-binding mediation that included Defendants' production of relevant information concerning possible infringement.

39. On October 23, 2015, pursuant to Defendants' request, JM proposed a protocol for an informal process by which JM could obtain the information it sought while maintaining the confidentiality of Defendants' information.

40. On October 26, 2015, counsel for Defendants requested that JM send the document describing JM's proposal for an informal discovery process in Microsoft Word®

format so that Defendants could respond with their own proposal. JM's counsel complied with the request.

41. In a letter to JM dated November 4, 2015, counsel for Defendants declined to engage in the proposed informal patent process proposed by JM, stating that they "see no basis for [JM's four patents] to be asserted against Knauf." A copy of Defendants' letter is attached hereto as **Exhibit D**.

42. Defendants have not provided the information that JM has sought to assist JM in confirming whether Defendants' activities and products are within the scope of one or more claims of the '282 Patent.

43. In the absence of such information, JM is forced to resort to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards the information that is required to confirm its belief and to present to the Court evidence that Defendants infringe one or more claim of the '282 Patent.

44. Upon information and belief, Defendants have practiced and/or are practicing one or more of the claims of the '282 Patent.

45. Upon information and belief, Defendants' infringing activities have damaged and will continue to damage JM irreparably, and JM has no adequate remedy at law for its injuries.

## PRAYER FOR RELIEF

WHEREFORE, JM requests that judgment be entered in its favor and against Defendants as follows:

A. Entering judgment declaring that Defendants have infringed, directly and/or indirectly, literally and/or under the Doctrine of Equivalents, the '282 Patent in violation of 35 U.S.C. § 271;

B. Issuing preliminary and permanent injunctions enjoining Defendants, and each of their officers, agents, subsidiaries, and employees, and those in privity or in active concert with them, from further activities that constitute infringement of the '282 Patent;

C. Declaring that Defendants' infringement of the '282 Patent is willful and deliberate pursuant to 35 U.S.C. § 284;

D. Ordering that JM be awarded damages in an amount no less than a reasonable royalty for each asserted patent arising out of Defendants' infringement of the '282 Patent, together with costs, prejudgment interest, and post-judgment interest;

E. Declaring this an exceptional case under 35 U.S.C. § 285 and awarding attorneys' fees and trebling of damages; and

F. Awarding JM such other costs and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, JM demands a trial by jury on all issues so triable.

Dated: December 9, 2015        By:   /s/ *David E. Sipiora*
                                     *David E. Sipiora*
                                     E-mail: dsipiora@kilpatricktownsend.com
                                     *Miranda C. Rogers*
                                     E-mail: mrogers@kilpatricktownsend.com
                                     *Kevin M. Bell*
                                     E-mail: kbell@kilpatricktownsend.com
                                     *Laura K. Mullendore*

E-mail: lmullendore@kilpatricktownsend.com
Kilpatrick Townsend & Stockton LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
FAX: (303) 571-4321

*Attorneys for Plaintiffs Johns Manville Corporation and Johns Manville*